**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Wendell Dewayne QUARLES,**
**Defendant–Appellant.**

No. 00–5580.

United States Court of Appeals,
Sixth Circuit.

Feb. 13, 2002.

Before MERRITT, CLAY, and GILMAN, Circuit Judges.

CLAY, Circuit Judge.

Defendant, Wendell Dewayne Quarles, appeals from the judgment of conviction and sentence entered by the district court on April 19, 2000, following Defendant's jury trial conviction on count one of the indictment for aiding and abetting the simple possession in excess of five grams of cocaine base, in violation of 21 U.S.C. § 844 and 18 U.S.C. § 2; as well as his guilty plea conviction on count three of the indictment for aiding and abetting the simple possession of marijuana, in violation of 21 U.S.C. § 844 and 18 U.S.C. § 2, for which Defendant was sentenced to 78 months' imprisonment on count one, and 12 months' imprisonment on count three, to be served concurrently. For the reasons set forth below, we **AFFIRM.**

## BACKGROUND

### Procedural History

On May 6, 1999, Defendant was charged in a three-count indictment with possession of an amount in excess of five grams of cocaine base in violation of 21 U.S.C. § 844 and 18 U.S.C. § 2 in count one; possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 in count two; and with aiding and abetting the simple possession of marijuana in violation of 21 U.S.C. § 844 and 18 U.S.C. § 2 in count three. Defendant entered a guilty plea to count three on September 14, 1999, and a jury trial commenced thereafter on the remaining two counts of the indictment. On September 16, 1999, the court declared a mistrial after the jury advised that it was unable to reach a verdict in the case.

The case was scheduled for retrial on October 5, 1999, and, following a three-day trial, the jury informed the court that it was unable to reach a verdict; the court declared a mistrial once again. A third trial commenced on January 19, 2000, and, two days later on January 21, 2000, the jury returned a verdict of guilty on count one of the indictment and not guilty on count two.

Defendant was sentenced on April 18, 2000, to concurrent terms of 78 months' imprisonment on count one of the indictment, and to 12 months' imprisonment on count three of the indictment, to be followed by three years' supervised release. This timely appeal ensued.

### Facts

On October 17, 1999, Sean Wright, who at that time was a police officer with the Hopkinsville, Kentucky Police Department, stopped Defendant's vehicle at approximately 9:00 p.m. for driving with expired license plate tags. Officer Wright

approached Defendant's vehicle and at that point Defendant was already handing his driver's license to the officer through the driver's side window. Officer Wright then informed Defendant that he also needed to produce proof of insurance and vehicle registration. According to Officer Wright, Defendant was not looking at him during this time, and then handed the officer a handwritten receipt for an insurance payment. Officer Wright informed Defendant that this receipt was insufficient to constitute proof of insurance, and asked Defendant if he had proper proof of insurance. Defendant was fumbling through the glove box, and mumbled something to Officer Wright while still avoiding eye contact. Officer Wright directed Defendant to look at him, at which point Defendant removed "a light colored object" from his mouth and threw it out of the open passenger side window.

Officer Wright took a step back and asked Defendant in a more commanding voice to put his hands on the steering wheel, and then to step out of the car. Upon Defendant stepping out of the vehicle, Officer Wright noticed a handgun on the front seat of the car. Officer Wright handcuffed Defendant, placed him in the back of his patrol car, and called for back up. Once Defendant was secure in the back of the patrol car, Officer Wright went to search for the object that Defendant threw out of the window.

Upon searching the area, Officer Wright was able to recover the object which later was found to be crack cocaine. The crack cocaine was in a clear plastic bag and Officer Wright testified that there was saliva on the bag when he found it, "which told [him] that [the] object had just come out of somebody's mouth." The amount of crack cocaine in the baggie was later determined to be approximately one ounce.

Defendant was patted down and then searched incident to his arrest. Officer Wright and his back up officers, who by then had arrived on the scene, recovered approximately $1,500 in cash in Defendant's pants pocket and a small amount of marijuana. The officers searched Defendant's vehicle and found the loaded .40 caliber semi-automatic handgun, and approximately $8,000 in cash.

Defendant testified at trial, where he denied pulling anything from his mouth and throwing it out of the window.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE CLAIM

Defendant first argues that there was insufficient evidence presented by the prosecution for the jury to have found him guilty beyond a reasonable doubt of possession of crack cocaine in excess of five grams. Defendant properly preserved this issue for appellate review by making a motion for judgment of acquittal. *See* Fed.R.Crim.P. 29; *United States v. Horry,* 49 F.3d 1178, 1179 (6th Cir.1995). When reviewing a challenge to the sufficiency of the evidence, this Court views the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *See United States v. Jones,* 102 F.3d 804, 807–08 (6th Cir.1996). A defendant making such a challenge bears a very heavy burden. *See United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.1986). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Id.* (citing *United States v. Stone,* 748 F.2d 361 (6th Cir.1984)).

■ The elements that must be satisfied by proof beyond a reasonable doubt in order to convict a defendant of possession of in excess of five grams of cocaine base are 1) that the person possessed a controlled substance; 2) that the substance was in fact cocaine base; and 3) that the quantity of cocaine base was in excess of five grams. *See* 21 U.S.C. § 844.

■ In the matter at hand, Defendant claims that the government failed to present sufficient evidence on the element of possession. Defendant contends that issues regarding Officer Wright's credibility aside, the evidence was insufficient to show that Defendant had possession of the cocaine, which was found twenty-nine feet from the car, inasmuch as there was no fingerprint analysis or DNA testing done on the bag, Officer Wright could not positively identify the bag as being the specific object hurled from Defendant's mouth, the object was found too far away for it to have come from Defendant's mouth, no debris was stuck to the bag although it allegedly was wet, and the area in which the cocaine was found is frequented by drug addicts. Defendant further claims that when considering the above in light of the fact that Officer Wright's testimony cannot be viewed as credible, inasmuch as the officer is no longer with the police force and made a statement at trial that was inconsistent with a statement made at the suppression hearing, it becomes clear that no reasonable juror could have found that Defendant possessed the cocaine beyond a reasonable doubt.

We note that a jury heard the testimony of Officer Wright, heard the testimony of Defendant, considered both in light of the arguments presented by Defendant, and was persuaded that the government had proven the element of possession beyond a reasonable doubt. We also note that Officer Wright testified that when he found

the bag, it was covered in saliva and it was found in the direction of where he observed Defendant take "his index finder and thumb and reached in his mouth, and with one motion flipped a light colored object out of the passenger window, which it [sic] was rolled down at the time." (J.A. at 86–88.) In addition, Officer Wright testified that there were no other people in the area at the time. Therefore, considering this testimony, a reasonable juror could have found that the saliva-covered bag of crack cocaine found in the same direction in which Defendant threw the object from his mouth was one in the same, such that Defendant possessed the cocaine upon being stopped by the officer, particularly where this Court will not consider the credibility of a witness on a sufficiency of the evidence claim. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993) ("We do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury [on a sufficiency claim].").

## II. SENTENCE ENHANCEMENT FOR POSSESSION OF A FIREARM

■ Defendant next argues that the district court erred in enhancing his base offense level by two points for possession of a firearm in connection with a drug offense under USSG § 2D1.1. This Court usually reviews a sentencing court's factual findings for clear error; however, when the facts are undisputed, the question of whether the district court appropriately applied the Guidelines to a particular set of facts is a question of law that the court reviews *de novo*. *See United States v. Tilford*, 224 F.3d 865, 867 (6th Cir.2000). Because Defendant did not object to the district court's application of the enhancement, this Court's review is limited to plain error. When reviewing a claim un-

der a plain error standard, this Court may reverse only if it is found that (1) there is an error; (2) the error is plain; (3) it affected the defendant's substantial rights; and (4) it seriously affected the fairness, integrity or public reputation of judicial proceedings. *See United States v. Carter,* 236 F.3d 777, 783–84 (6th Cir.2001).

█ Defendant argues that because he was convicted of simple possession of cocaine and marijuana, USSG § 2D1.1 does not apply. Instead, Defendant claims that he should have been sentenced under USSG § 2D2.1 which does not contain a firearm enhancement. Defendant is correct in the sense that the statutory provision attendant to § 2D1.1 is 21 U.S.C. § 841(a), while the statutory provision attendant to § 2D2.1 is 21 U.S.C. § 844. And Defendant is correct in the sense that § 2D2.1 does not contain a firearm enhancement. However, Defendant fails to note that § 2D2.1 also provides that

(1) If the defendant is convicted of possession of more than 5 grams of a mixture or substance containing cocaine base, apply § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking) as if the defendant had been convicted of possession of that mixture or substance with intent to distribute.

USSG § 2D2.1. Accordingly, because Defendant was convicted of possession in excess of five grams of cocaine base, § 2D1.1 applies.

Defendant argues in the alternative that even in § 2D1.1 is applicable, there was insufficient evidence for the enhancement to apply. Defendant contends that the weapon found in his car was there for his protection in the closing of his business. Defendant notes that Officer Wright admitted seeing Defendant with weapons a month prior to the arrest when there were no drugs present. Accordingly, Defendant concludes that there was no evidence presented to connect the weapon to the drugs for purposes of applying the enhancement. We disagree.

"To apply the two-level enhancement under § 2D1.1(b)(1), the government must establish that (1) the defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense." *United States v. Hill,* 79 F.3d 1477, 1485 (6th Cir.1996). " 'Once it is established that a defendant was in possession of a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense.' " *Id.* (quoting *United States v. Sanchez,* 928 F.2d 1450, 1460 (6th Cir.1991)). "The burden then shifts to the defendant to show that 'it is clearly improbable that the weapon was connected to the offense.' " *Id.* (quoting *Sanchez,* 928 F.2d at 1460)).

Under a plain error review, the district court's application of this sentence enhancement was not erroneous inasmuch as it is not clearly improbable that the .40 caliber semi-automatic handgun found in Defendant's possession at the time of his arrest was connected to Defendant's possession of the crack cocaine. Defendant's belated argument that the gun was for his safety during the closing of his business does not rise to the level of making it "clearly improbable" that the gun was connected to the drugs, particularly under plain error review. *See Hill,* 79 F.3d at 1485–86 (rejecting Defendant's argument that the enhancement did not apply because the gun, which was found in a room of the house other than that in which the drugs were found, was kept for protection); *see also United States v. Payne,* 805 F.2d 1062, 1065 (D.C.Cir.1986) (recognizing the weapons are as common tools of the trade as drug paraphernalia).

## III. ADMISSION OF 404(b) EVIDENCE

█ Defendant next argues that the district court abused its discretion in refusing to admit evidence under Federal Rule of Evidence 404(b). Admission of evidence, or in this case the decision not to admit evidence, under Federal Rule of Evidence 404(b) is decided under a three-step inquiry:

First, the trial court must make a preliminary determination as to whether sufficient evidence exists that the prior act occurred. Second, the district court must make a determination as to whether the "other act" is admissible for a proper purpose under Rule 404(b). Third, the district court must determine whether the "other acts" evidence is more prejudicial than probative under Rule 403.

*United States v. Mack,* 258 F.3d 548, 553 & n. 1 (6th Cir.2001). We review a district court's determination as to whether evidence may be admitted under Rule 404(b) for an abuse of discretion. *Id.* (citing *Trepel v. Roadway Express, Inc.,* 194 F.3d 708, 716 (6th Cir.1999)).

█ "Evidence of other crimes, wrongs, or acts" may be admitted in a criminal trial for purposes other than to prove character. *See* Fed.R.Evid. 404(b). Defendant in this case sought to introduce extrinsic evidence under Rule 404(b) regarding three incidents which, according to Defendant, illustrate Officer Wright's racial bias. Specifically, Defendant sought to introduce evidence regarding an incident involving an African–American female, Ms. Trice, wherein Officer Wright allegedly "restrained her physically, cuffed her, he manhandled her, [and] he arrested her" when responding to a domestic violence call. (J.A. at 51.) Defendant believed that the charges against Ms. Tice were dismissed, but he was not sure. The second incident regarding Officer Wright's alleged racially biased conduct involved another African–American female named Ms. Farley. Defendant sought to introduce evidence involving Ms. Farley and a traffic stop by another officer. After the officer drew his weapon because he believed that Ms. Farley was reaching for a weapon, Officer Wright allegedly came on the scene and "there was some physical handling, manhandling of the young lady as far as getting out of the car, arresting her at the scene of that nature. She was charged with resisting arrest, DUI and various other sundry traffic matters and she was found guilty of a number of those charges." (J.A. at 52.) Finally, Defendant sought to introduce evidence of Officer Wright's alleged use of the "n" word. Specifically, Defendant claimed that upon hearing that the person to whom Officer Wright had sold his home had subsequently sold the home to an African American, Officer Wright "confronted the gentleman and said that he resented him selling his home, and he used a racial epitaph." (J.A. at 53.) When asked whether the racial epitaph was the "n" word, defense counsel responded in the affirmative. (J.A. at 53.) Defendant did not have any of the individuals to whom Officer Wright allegedly treated in a disparate fashion present to testify.

The district court refused to admit this evidence, opining as follows:

The, the instance involving Ms. Trice, Ms. Trice and Ms. Farley, both occurred in the summer of '99. I don't, other than they were African–Americans and, and, and Mr. Wright is white, is nothing you told me to indicate that race was an issue other than by happenstance that they were opposite races. Especially on Ms. Farley when she was also convicted of, I mean, some criminal conduct and he was the back-up officer I think has

very little probative value at all and I think on both of them what little probative value they have is greatly outweighed by the prejudicial impact that would be involved.

In regards to the one statement made by officer Wright, originally made by officer Wright in the summer of '99, that, too, happened ten months after this incident and I don't see a, if you had a history to this type of conduct, you know, of several instances I believe that would, that would, I would definitely let it in. But here you got one statement made in a different type of context, it wasn't made in his official job duties and was not made as he's working as a police officer. I don't know that the exact context in which it was made, it was inappropriate if it was made, we all agree to that, but I just don't, I believe what little probative value it would have is greatly outweighed by the undue prejudice it would cause in this case. So I deny the motion. I don't know if the 404(b), you're introducing to show extrinsic evidence, to show bias, all kinds of things, the same type of thing, I think.

(J.A. at 55–57.)

On appeal, Defendant fails to cite to any authority in support of his contention that the district court abused its discretion in denying Defendant's motion to admit the evidence. Defendant simply argues that "the evidence was proper ... to show both intent on the part of the officer on the date of the arrest, and his state of mind during the arrest. Such evidence was clearly admissible under 404(b), and therefore, it was reversible error to allow the defense evidence." (Defendant's Brief on Appeal at 14.) Defendant concludes by claiming that the district court's failure to allow this evidence into trial was prejudicial because much of the case turned on Officer Wright's credibility, and the evidence would have cast doubt on Officer Wright's credibility.

Defendant's lack of authoritative support for his arguments aside, the district court did not abuse its discretion in finding this evidence inadmissible as more prejudicial than probative. The outcome may have been different if Defendant had argued that Officer Wright initially stopped him because of racial profiling, inasmuch as an argument could have been made that the initial stop was illegal. However, Defendant made no such claim. The result regarding the admission of this evidence also may have been different had there been evidence that Officer Wright used physical or excessive force in effectuating Defendant's arrest, or had he used racial slurs in the course thereof; but the record is void of any such evidence. Rather, the evidence shows that Defendant was stopped for having expired license plate tabs; that he could not produce valid proof of insurance; would not look at Officer Wright and, when asked to do so, pulled the object out of his mouth and threw it out of the window. Officer Wright then asked Defendant to step out of the vehicle at which point Officer Wright noticed the gun on the front seat, and then put Defendant under arrest.

Under these facts, the evidence was not only more prejudicial than probative, but likely not relevant under Federal Rule of Evidence 401 inasmuch as the evidence did not to make the existence of any necessary fact more likely than not, thereby making the evidence inadmissible under Federal Rule of Evidence 402. Again, this was not a case where racial profiling in the course of a traffic stop was raised, where excessive force was at issue, or where there was any evidence that Officer Wright's actions were based on Defendant's race.

Accordingly, we hold that the district court did not abuse its discretion in refus-

ing to allow Defendant to admit this evidence at trial, taking into account that the record was weak as to whether the events occurred; the evidence likely was not relevant; and it was more prejudicial than probative even if considered relevant. *See Mack*, 258 F.3d at 553.

## IV. WHETHER THE THIRD TRIAL OF THE APPELLANT CONSTITUTED DOUBLE JEOPARDY

■ Defendant claims that the district court violated Defendant's right to be free from double jeopardy by trying him for a third time. "The standard of review for a double jeopardy claim after a mistrial varies according to the issues involved." *United States v. Stevens*, 177 F.3d 579, 583 (6th Cir.1999). Where the basis for a mistrial is a hung jury, the standard of review is for an abuse of discretion. *See id.*

■ "[A] trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected." *Richardson v. United States*, 468 U.S. 317, 326, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). Defendant attempts to avoid the application of the well-steeped law, which is premised upon the notion of "continuing jeopardy," through the application of the manifest necessity test. In support of his argument, Defendant relies upon the Tenth Circuit's decision in *United States v. Shinault*, 147 F.3d 1266 (10th Cir.1998). In that case, relying on Supreme Court precedent, the court noted that "the manifest necessity test should be used 'when a criminal proceeding is *terminated* without finally resolving the merits.'" *Id.* at 1276 (quoting *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (emphasis added in *Shinault* )). The application of the manifest necessity test to determine whether the prior proceeding actually terminated for purposes of double jeopardy begins by examining the interests associated with the Double Jeopardy Clause, such as "concern that repeated trials may subject a defendant to embarrassment, expense and ordeal and compel him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Id.* (quoting *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 320, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984)). "'Jeopardy may be said to have terminated only when the posture of a trial in some objective sense leaves that defendant in such a position that resumption of proceedings would implicate those policies.'" *Id.* (quoting *Lydon*, 466 U.S. at 320). "Only if the trial before the new tribunal reasonably implicates the policies described above has the first proceeding terminated. Only then do we proceed to the manifest necessity analysis." *Id.*

Defendant argues that these principles of double jeopardy are implicated here such that the district court should have dismissed the action against him instead of retrying him. However, Defendant did not challenge the propriety of the district court's decision to declare a mistrial instead of dismissing his case below. Rather, he comes now on appeal, after being convicted by a jury, and claims that his right to be free from double jeopardy was violated. The Defendant's belated argument is unavailing where the policies associated with not allowing jeopardy to continue are prospective and it appears disingenuous for Defendant to raise these policy issues only *after* being found guilty on retrial.

## V. STANDARD OF PROOF REGARDING SENTENCING FACTORS

This Court usually reviews a sentencing court's factual findings for clear error; however, when the facts are undisputed, the question of whether the district court appropriately applied the Guidelines to a

particular set of facts is a question of law that the court reviews *de novo. See United States v. Tilford,* 224 F.3d at 867. Because Defendant did not object to the district court's application of the firearm enhancement, this Court's review is limited to plain error. When reviewing a claim under a plain error standard, this Court may reverse only if it is found (1) there is an error; (2) the error is plain; (3) it affected the defendant's substantial rights; and (4) it seriously affected the fairness, integrity or public reputation of judicial proceedings. *See Carter,* 236 F.3d at 783–84.

 On appeal, Defendant raises the following arguments for the first time: first, that the district court erred in enhancing Defendant's sentence by two levels for possession of a firearm, because the issue of whether Defendant possessed a firearm was not decided by a jury; and second, that the statutory maximum sentence in this case was unlawfully enhanced from one year to twenty years of imprisonment based upon a finding that the controlled substance was cocaine base and that the amount was in excess of five grams. Defendant rests both of his arguments on the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), wherein the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Defendant's arguments are without merit.

As to Defendant's claim that the application of the two-level enhancement to Defendant's base offense level under the guidelines for possession of the firearm violated *Apprendi,* this Court recently held that *"Apprendi* does not purport to apply to penalties in excess of any particular range or based on any offense level under the Sentencing Guidelines." *United States v. Garcia,* 252 F.3d 838, 843 (6th Cir.2001).

As to Defendant's second claim of plain error, the jury was instructed that in order to find Defendant guilty of the crime for which he was being tried under § 844, they must determine that Defendant possessed a controlled substance; that the controlled substance was cocaine base; and that the quantity of base was in excess of five grams. (J.A. at 247–48, 250.) These are the elements of the crime under § 844, for which the maximum sentence available is 20 years' imprisonment. Defendant was sentenced to 78 months' imprisonment (6.5 years) for this crime; therefore, his *Apprendi* claim is wholly without merit.

## CONCLUSION

For the above-stated reasons, Defendant's judgment of conviction and sentence is **AFFIRMED.**