657 F.Supp.2d 1218 (2009)
John NASIOUS, Plaintiff,
v.
TWO UNKNOWN B.I.C.E. AGENTS AT the ARAPAHOE COUNTY JUSTICE CENTER; United States Department of Homeland SecurityImmigration and Customs EnforcementAgent Michael Wheeler; and United States Department of Homeland Security Immigration and Customs EnforcementAgent Lee, Defendants.
Civil Action No. 06-cv-01765-ZLW-KMT.
United States District Court, D. Colorado.
August 5, 2009.
*1221 John Nasious, Sterling, CO, pro se.
Mark S. Pestal, U.S. Attorney's Office, Denver, CO, for Michael Wheeler Agent.

ORDER
ZITA L. WEINSHIENK, Senior District Judge.
The matter before the Court is Defendant Wheeler's Motion To Dismiss Or, In the Alternative, For Summary Judgment (Doc. No. 78) (Motion). This matter was referred to Magistrate Judge Kathleen M. Tafoya pursuant to 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72. On January 27, 2009, the Magistrate Judge issued a Recommendation Of United States Magistrate Judge (Recommendation) recommending that the Motion be granted. (Doc. No. 84). Plaintiff filed a timely written objection to the Recommendation on February 6, 2009.[1] (Doc. No. 85). The Court reviews de novo those portions of the Magistrate Judge's Recommendation to which Plaintiff has specifically objected.[2]
The undisputed facts presented on Defendant's Motion indicate that in August 2005, Defendant Michael Wheeler, an officer with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), lodged an immigration detainer against Plaintiff, who was then a prisoner in the Denver County Jail awaiting disposition of state criminal charges against him. Defendant Wheeler lodged the detainer after Plaintiff told him during an interrogation session at the Denver County Jail that he was a native of Greece, and based upon the lack of any Department of Homeland Security records showing that Plaintiff had a proper visa. Defendant Wheeler then withdrew the detainer in April 2006 after Plaintiff changed his story, asserting that he was actually a U.S. citizen, and provided an Illinois birth certificate. Plaintiff claims that his constitutional due process rights[3] were violated when Defendant Wheeler "held Plaintiff Nasious with an illegal immigration detainer for 9 ½ months at the Denver County Jail and Arapahoe County Detention Facility,"[4] "violating [Plaintiff's] right to be able to bond, and his rights to go to Community Corrections."[5] Plaintiff appears to be suing Defendant Wheeler in his individual capacity pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics.[6]
*1222 Defendant Wheeler's Motion is expressly titled as a motion to dismiss or for summary judgment, and it recites the specific standard of review for motions for summary judgment under Fed.R.Civ.P. . Thus, Plaintiff was on notice that Defendant Wheeler was moving for summary judgment in the alternative, and the Magistrate Judge properly treated the Motion, to which two evidentiary exhibits were attached, as one for summary judgment.
Although Plaintiff never filed a response to Defendant Wheeler's motion, he now asserts in his objection to the Magistrate Judge's Recommendation that he "disputes the facts presented by the moving party's motion and requests that the motion be postponed or denied until discovery has taken place, so that additional facts can be gathered to permit fair and proper justice in this case."[7] Under Fed. R.Civ.P. 56(f), the court may deny or continue a motion for summary judgment where the party opposing the motion shows by affidavit that, for specified reasons, he or she cannot present facts essential to support his or her opposition. The Rule 56(f) affidavit must "explain[ ] why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts."[8] The affidavit must "state with specificity how the additional material will rebut the summary judgment motion."[9] Plaintiff filed no such affidavit in response to the Motion, and has at no time identified the specific allegedly unavailable facts and the steps taken to obtain them. Although the Court must construe, and has construed, Plaintiff's pleadings liberally because he is proceeding pro se, Plaintiff's pro se status does not relieve him of his obligation to comply with the Federal Rules of Civil Procedure.[10] Plaintiff's objection lacks merit to the extent that it argues for denial or postponement of the Motion pending further, unspecified, discovery.
Plaintiff also argues that Defendant Wheeler is not entitled to sovereign immunity. Neither Defendant Wheeler's Motion nor the Magistrate Judge's Recommendation were premised upon, or even mention, sovereign immunity. While Defendant Wheeler did argue that he is entitled to qualified immunity, the Magistrate Judge stated that, because there is no evidence of a constitutional violation in this case, she would "not address the application of the doctrine of qualified immunity to Defendant Wheeler."[11] Thus, the Magistrate Judge's Recommendation was not based in any way on the doctrine of qualified immunity, and any objection by Plaintiff concerning qualified immunity lacks merit.
The only remaining specific objection submitted by Plaintiff appears to be that, while the Magistrate Judge concluded that the lodging of the immigration detainer did not violate Plaintiff's due process rights, according to Plaintiff, the "detention continued long enough to constitute punishment, [and thus] his duration of detention may be held to violate due process."[12] However, despite its perhaps *1223 confusing nomenclature, the ICE detainer did not impose, create, or affect the duration of Plaintiff's detention in Denver County Jail or the Arapahoe County Detention Facility. Plaintiff's detention was imposed by the state of Colorado based on Plaintiff's pending criminal charges; it was not imposed by or in any way impacted by the ICE detainer. Rather, the ICE detainer merely requested that the Denver County Jail notify ICE in the event that Plaintiff was transferred to another institution.[13] As such, the ICE detainer could not, as a matter of law, constitute a restraint on or deprivation of a liberty interest upon which a due process violation could be premised.[14] Although Plaintiff contends that Defendant Wheeler's "refus[al] to lift the detainer" for a period of time violated Plaintiff's "right to be able to bond, and his right to go to Community Corrections,"[15] Plaintiff had no constitutionally protected right to be placed in Community Corrections, and thus a denial of such placement could not violate due process.[16] To the extent that Plaintiff now is arguing that the ICE detainer violated his "constitutional right to bail" prior to sentencing,[17] there is no constitutional right to unconditional release on bail upon which a due process violation could be based.[18]
For the foregoing reasons, the January 27, 2009, Recommendation of the Magistrate Judge is accepted and adopted, and it is
ORDERED that Defendant Wheeler's Motion To Dismiss Or, In the Alternative, For Summary Judgment, treated as a motion for summary judgment, is granted. It is
FURTHER ORDERED that Defendant Michael Wheeler, designated on the case caption as "United States Department Of Homeland SecurityImmigration and Customs EnforcementAgent Michael Wheeler," is dismissed from this action with prejudice. It is
FURTHER ORDERED that Defendants "Two Unknown BICE Agents at the Arapahoe County Justice Center" are dismissed from this action without prejudice, since they were named in the "3rd Amended Prisoner Complaint" filed January 14, 2008, but have not been identified or served in this action to date. It is
FURTHER ORDERED that Defendant "Agent Lee," designated on the case caption as "United States Department Of Homeland SecurityImmigration and Customs EnforcementAgent Lee" is dismissed from this action without prejudice, *1224 since he has not been served in this action to date. It is
FURTHER ORDERED that the 3rd Amended Prisoner Complaint and cause of action are dismissed with prejudice as to Defendant Wheeler and without prejudice as to the remaining Defendants, as set forth above, the parties to pay their own costs and attorney's fees. It is
FURTHER ORDERED that a separate Judgment shall issue pursuant to Fed. R.Civ.P. 58(a).

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
KATHLEEN M. TAFOYA, United States Magistrate Judge.
This matter is before the court on "Defendant Wheeler's Motion to Dismiss or, in the Alternative, for Summary Judgment" (Doc. No. 78, filed on June 4, 2008).

FACTUAL BACKGROUND
The following facts are taken from Plaintiffs Complaint and the parties' submissions with respect to this Recommendation. Plaintiff is currently incarcerated at the Sterling Correctional Facility in Sterling, Colorado. The events in this case relate to a time period when Plaintiff was in custody at the Denver County Jail ("Denver Jail"),[1] pending disposition of charges on a five-count indictment, to which he pled guilty to one count of Forgery-Check/Commercial Instrument, a violation of C.R.S. § 18-5-102(1)(c). On November 10, 2005, the Colorado District Court sentenced him to Community Corrections for four years. (Def. Wheeler's Mot. to Dismiss at 10-11 [hereinafter "Def's Mot."]). Instead of being transferred to a Community Corrections facility at that time, Plaintiff remained in custody at the Denver Jail after his sentencing. (Third Am. Prisoner Compl. at 4 [hereinafter "Compl."] [filed January 14, 2008]).
Defendant Michael Wheeler ("Defendant Wheeler") is an Officer with the United States Immigration and Customs Enforcement ("ICE"), and he was a Special Agent in the Denver Office of Investigations for ICE when the alleged incident occurred. (Def's Mot., Ex.A1 at 3-4.). Plaintiff has sued Defendant Wheeler in his individual capacity pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
As an initial matter, the process of interpreting the Plaintiffs Complaint has been especially challenging for the court, given the sheer amount of varied arguments contained within it. In his Complaint, Plaintiff, a United States citizen, argues that his detention at the Denver Jail from August 3, 2005 through April 24, 2006 (the period when the ICE Detainer was in effect) constituted a "due process/illegally detained/discrimination on the basis of ethnicity Fourteenth Amendment." (Compl. at 3.). He alleges that Defendant Wheeler had no probable cause to have caused him to remain in custody for "nine-and-a-half months" at the county jail on the ICE Detainer ("Detainer"). (Id. at 4.).
Plaintiff presents the gravamen of his Complaint:
Due to the erroneous immigration detainer "Nasious" has been subjected to various civil and constitutional right violations by Agent Michael Wheeler, directly or indirectly. Agent Michael Wheeler has falsified document signatures, and lied under penalty of perjury on his declaration dated 8-31-06 and the signature on the detainer file no. A97825533 is not his signature."
* * *

*1225 I am an American citizen and a citizen of the state of Colorado since 1962. I am being held on a immigration detainer for the last nine months as an alien of Greece. Due to racial profiling and my greek heritage. (Id. at 4, 7.).
The Plaintiff argues that his due process rights were violated because the ICE detainer (which Defendant Wheeler requested on August 3, 2005, the same day as the initial interview with the Plaintiff) prevented him from posting bond to go to a Community Corrections facility after his sentencing in Colorado District Court on November 10, 2005. (Id. at 4.).
Although Plaintiff repeatedly expresses an interest in going to a Community Corrections facility in his Complaint, he no longer appears to be eligible for any community corrections program. (Def's Mot., Courtlink State Court Docket at 3-4.). In fact, Plaintiff placed his opportunity to go to Community Corrections into jeopardy by violating his probation, after the detainer was removed. (Id.). As a consequence, on May 23, 2006, less than one month after removal of the detainer, the state court issued a warrant for the Plaintiffs arrest for failure to comply with the terms and conditions of his probation. (Id.). On February 22, 2007, the Colorado District Court resentenced him to four years at the Department of Corrections and two years of parole. (Id.).
In his motion, Defendant Wheeler states the Complaint should be dismissed because: (1) the detainer did not deprive Plaintiff of a constitutional interest; and (2) the Defendants did not violate clearly established law by lodging the immigration detainer. (Def's Mot. at 10,11.).

PROCEDURAL HISTORY
Plaintiff's Third Amended Complaint was filed on January 14, 2008. (Compl.). Defendant Wheeler filed his motion to dismiss or for summary judgment on June 4, 2008. (Def's Mot.). No response or reply has been filed. This matter is ripe for review and recommendation.

STANDARD OF REVIEW

1. Pro Se Plaintiff
Because Plaintiff appears pro se, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." Trackwell v. United States, 472 F.3d 1242, 1243 (10th Cir.2007) (citations omitted). See also Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). See also Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir.1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir.1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

2. Failure to State a Claim Upon Which Relief Can Be Granted
Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6) (2007). *1226 "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiffs complaint alone is legally sufficient to state a claim for which relief may be granted." Dubbs v. Head Start, Inc., 336 F.3d 1194, 1201 (10th Cir.2003) (citations and quotation marks omitted).
Thus, all well-pleaded factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff. Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir.2007). Further, the court is to make all reasonable inferences in the plaintiff's favor. Timpanogos Tribe v. Conway, 286 F.3d 1195, 1204 (10th Cir.2002). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), the Supreme Court articulated the "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S.Ct. at 1974.
The issue in reviewing the sufficiency of a plaintiffs complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Although a plaintiff does not need to state each element of his claim precisely, he must plead minimal factual allegations on those material elements that must be proved. See Fed.R.Civ.P. 8(a); Hall, 935 F.2d at 1110.
"A 12(b)(6) motion must be converted into a motion for summary judgment if `matters outside the pleadings are presented to and not excluded by the court' and `all parties ... [are] given a reasonable opportunity to present all material made pertinent to such a motion by [Fed.R.Civ.P.] 56.'" GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Fed.R.Civ.P. 12(d)); see also Burnham v. Humphrey Hospitality Reit Trust, Inc., 403 F.3d 709, 713 (10th Cir.2005) (holding that where the District Court relied on facts presented in affidavits, a Rule 12(b)(6) motion was properly converted into a motion for summary judgment).
Defendants' motion made pursuant to Rule 12(b)(6), or in the alternative Rule 56, references materials outside of the pleadings. Nevertheless, "[W]hen a party [references] material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion." Wheeler v. Main Hurdman, 825 F.2d 257, 260 (10th Cir.1987) (citing See Nichols v. United States, 796 F.2d 361, 364 (10th Cir.1986)). Here, Defendant moved either to dismiss or for summary judgment. Plaintiff, although given an opportunity to file a response, failed to do so. Consequently, unfair surprise is not an issue, and this court will treat Defendants' motion as one for summary judgment.

3. Summary Judgment Standard
Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c) (2006); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Concrete Works, Inc. v. City & County of Denver, 36 F.3d 1513, 1517 (10th Cir.1994). The moving party bears the initial burden *1227 of showing an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." Concrete Works, 36 F.3d at 1518 (citing Celotex, 477 U.S. at 325, 106 S.Ct. 2548). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S.Ct. 2548; see Fed.R.Civ.P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. Allen v. Muskogee, 119 F.3d 837, 839 (10th Cir.1997) (citing Anderson, 477 U.S. at 248, 106 S.Ct. 2505). The court may consider only admissible evidence when ruling on a summary judgment motion. See World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir.1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir.1998) (citing Concrete Works, 36 F.3d at 1517).

ANALYSIS
The Court makes a liberal reading of Plaintiff's Complaint, and determines that he is making a claim for violations of his due process rights. His Complaint, which only lists one claim for relief, also appears to contain a claim of violation of equal protection, and intentional infliction of emotional distress. Therefore, the Court will address these additional claims as well.

I. Due Process
In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that injured plaintiffs can bring a cause of action for damages against federal officers based on violations of their constitutional rights. Bivens involved alleged violations of the Fourth Amendment, but the Supreme Court has also allowed Bivens actions for violations of the Due Process Clause of the Fifth Amendment. Davis v. Passman, 442 U.S. 228, 233-248, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).
A party's right to due process may be violated if the government deprives that person of life, liberty, or property. See U.S. Const. amend. V. Due process is defined as, "[t]he conduct of legal proceedings according to established rules and principles for the protection and enforcement of private rights, including notice and the right to a fair hearing before a tribunal with the power to decide the case."[2]
An inmate, one who has already been deprived of liberty, such as the Plaintiff, can be deprived further of his liberty, such that due process is required, when (1) a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court, or (2) when the government has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Kirby v. Siegelman, 195 F.3d 1285, 1290-91 (11th Cir.1999) (citing Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). Therefore, the question in Plaintiff's due process claim is whether the lodging and maintaining of the INS detainer *1228 complied with constitutional due process requirements.

A. Filing the Detainer Did Not Violate Due Process
Defendant Wheeler's filing of the detainer upon Plaintiffs arrest did not violate due process. A review of the record does not support Plaintiffs allegations that a due process violation occurred. To the contrary, Defendant Wheeler acted in accordance with normal ICE procedures in filing the original detainer. (Id. at 2.). Defendant Wheeler states in his first Declaration, attached by Plaintiff in his Complaint, that he reasonably believed that the Plaintiff was in this country unlawfully based on the Plaintiff's own statements to him and the lack of valid immigration documentation. (Compl. at 17.).
Plaintiff first told Defendant Wheeler that he was a native of Greece. (Id.; Def's Mot., Ex. A: Supplemental Declaration of Officer Michael Wheeler at 2 [hereinafter "Suppl. Decl."].). Next, Defendant Wheeler's search did not locate any DHS records showing that the Plaintiff received a valid, unexpired, immigrant or non-immigrant visa. (Id.). As such, Defendant Wheeler lodged the ICE Form 1-247. (Def's Mot. at 4, Ex. 2.)[3] At some point after the lodgment of the detainer, Plaintiff changed his story, and his father provided a copy of a State of Illinois birth certificate to ICE to show that Plaintiff was indeed a U.S. citizen, and that he was not an illegal alien. (Id.). Upon confirming this information, and after conferring with another agent, Ronald Strong ("Strong"), Defendant Wheeler withdrew the detainer. (Id.). That same day, Agent Strong executed a cancellation form and faxed it to the Denver County Sheriff, instructing the Sheriff to cancel and remove the detainer on April 24, 2006. (Def's Mot. at 4, Ex. 2: Immigration Detainer-Notice of Action; Compl. at 15).
As noted supra, Plaintiff did not file a reply to Defendant Wheeler's response. As such, the court is left with the existing record on which to base its Recommendation. At the outset, the Plaintiff never directly discusses the answers or responses he provided to Defendant Wheeler's questions during the August 3, 2005 interview. Plaintiffs answers were the sole and proximate cause of Defendant Wheeler's believing that Plaintiff was an illegal alien. (Compl. at 4.). In particular, Plaintiff never denies he told Defendant Wheeler during the interview that he was a Greek citizen, or a non-U.S. citizen, and never explains why he initially pretended not to speak and understand English. (Def's Mot. Ex. 1: August 22, 2005 Record of Deportable/Inadmissible Alien). Instead, the Plaintiff conveniently ignores any explanation about what precisely happened during the initial interview, and does not contest, or provide a different version of, Defendant Wheeler's factual statements regarding the interview. Therefore, Defendant Wheeler's sworn statement about these events will be considered *1229 as undisputed facts by this court. Plaintiffs only claim is that Defendant Wheeler "lied" about the Plaintiffs citizenship status on the detainer form.[4] (Id.). Lodging the the Detainer caused no deprivation of any life, liberty, or property. Accordingly, the filing of the Detainer under these undisputed facts was not a violation of due process.

B. The Lodgment of A Detainer Does Not Constitute Custody
A detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." Fex v. Michigan, 507 U.S. 43, 44, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). Filing a detainer is an informal process that generally can be done by any person who has authority to take a prisoner into custody. A detainer can remain lodged against a prisoner without any action being taken on it. See Ridgeway v. United States, 558 F.2d 357 (6th Cir.1977), cert. denied, 436 U.S. 946, 98 S.Ct. 2850, 56 L.Ed.2d 788 (1978).
"Custody" is a term that courts have liberally construed to include not only physical incarceration, but also other "significant restraints on personal liberty."[5] Almost all of the circuit courts considering the issue have determined that the lodging of an immigration detainer, without more, is insufficient to render someone in custody. Prieto v. Gluch, 913 F.2d 1159, 1162-64 (6th Cir.1990) (petitioner not "in custody" where INS "detainer notice does not claim the right to take a petitioner into custody in the future nor does it ask the warden to hold a petitioner for that purpose"); Campillo v. Sullivan, 853 F.2d 593, 595 (8th Cir.1988) (where detainer "merely notifies prison officials that a decision regarding his deportation will be made by the INS at some future date ... filing of an INS detainer, standing alone, does not cause a sentenced offender to come within the custody of the INS"). "Because there is no actual claim to the alien following the completion of his criminal sentence, there is no custody." Galaviz-Medina v. Wooten, 27 F.3d 487, 493 (10th Cir.1994); but see Vargas v. Swan, 854 F.2d 1028, 1032-33 (7th Cir.1988) (holding that a detainer could, under particular circumstances, be sufficient to satisfy the custody requirement).[6] The underlying *1230 rationale of the majority view is that a detainer, as distinguished from other INS orders, does not place a "hold" on the person. Prieto, 913 F.2d at 1164, and therefore, does not serve to establish conclusively either present or future restraints on liberty. Campillo, 853 F.2d at 595.
The mere lodgment of the Detainer by Defendant Wheeler did not constitute custody. The Detainer, which was later withdrawn on April 24, 2006,[7] was only a request that Denver County authorities notify ICE prior to Plaintiff's release. There was no final deportation order issued, and no formal deportation proceedings were ever commenced. (Suppl. Decl. at 3.). There was no effort by ICE to establish physical custody of Plaintiff after he served his current prison term, or prior to commencement of his Community Corrections sentence. (Id.) Plaintiff was already in custody at the Denver Jail awaiting the disposition of his state criminal case.

C. The Plaintiff Had No Constitutional Right to Placement in a Community Corrections Facility
Plaintiff had no right or entitlement to be sent to Community Corrections from the Denver Jail. With respect to Plaintiffs claim that the lodgment of the detainer prevented him from being placed in community corrections, the U.S. Constitution itself does not create a protected liberty interest in a person's conditional release prior to the expiration of a valid sentence. Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Therefore, the Plaintiff does not have a federal constitutional right to be placed in a community corrections facility, as opposed to a jail or a prison, prior to the conclusion of his sentence. Since there was no constitutional right, no violation of the Due Process Clause could have occurred simply because the Plaintiff was not transferred from the jail to a different facility to serve his sentence.
Further, even if a judicial officer sentences an offender to Community Corrections, the Community Corrections Board has the authority to accept or reject any offender referred for placement in a constitutional corrections program. See Colo. Rev.Stat. § 17-27-103(5). Plaintiff, therefore, does not have a protected liberty interest, even in the state offender system, to be housed in a Community Corrections facility.

D. The Term of the Detainer is Irrelevant Because No Constitutional Rights Had Been Violated
There has been no showing that the term of the Detainer was improper, even accepting as true Plaintiffs allegation that he started working to undo the problems he created by lying about his nationality and language which resulted in getting the detainer lodged against him. According to his Complaint, Plaintiff timely[8] tried to inform jail officials, by lodging kites and grievances, that he was a U.S. citizen and the detainer was improperly lodged against him. (Compl. at 5). The Plaintiff *1231 asserts that he also began his efforts to clarify his citizenship status directly with the INS and prison officials. (Compl. at 3.). Plaintiff also stated that his family tried to file grievances through the proper channels. Plaintiff contends that,
Deputy Fisher, Detainer Operations Denver County Jail in connection with BICE, was contacted 15 times and ignored [Plaintiff's] kites grievances, concerns and requests about [Plaintiff's] concerns with this detainer. Captain Blair answered Nasious grievances `unfounded.' (Compl. at 4.).
The Plaintiff further asserts, "Agent Michael Wheeler, Agent Devalue Cummings are special agents for B.I.C.E at the Denver County Jail and Arapahoe County Jail, they both had been contacted on numerous occasions by [Plaintiffs] family members and failed to respond to any phone calls or letters regarding this detainer." (Id. at 5.). Plaintiff also provides a February 13, 2006 letter sent to him from the U.S. Department of Justice, Executive Office for Immigration Review, Immigration Court, informing him that the Immigration Court had no record of any immigration case opened against him. (Compl. at 14.).
For purposes of this Recommendation, the court accepts these facts as undisputed. In August 2005 Plaintiff told Defendant Wheeler that he was a native of Greece. (Suppl. Decl. at ¶ 6). Defendant Wheeler lodged the ICE Form 1-247 because he could not locate any DHS records showing that Plaintiff received a visa. (Def's Mot. at 4, Ex. 2.). In November 2005, Plaintiff was sentenced to four years incarceration, which the state court held to be served in a community corrections facility. Some time thereafter, Plaintiff began attempts to allow him to transfer to community corrections. Defendant Wheeler withdrew the detainer, upon confirming the validity of the State of Illinois birth certificate sent by Plaintiff's father which showed that he was a U.S. citizen. (Suppl. Decl. at ¶ 15-16). A cancellation form was executed and faxed it to the Denver County Sheriff, instructing the Sheriff to cancel and remove the detainer. (Id. at ¶ 16-17). The lodgment of the Detainer by Defendant Wheeler did not constitute custody. The Detainer was only a request that Denver County authorities notify ICE prior to Plaintiff's release. (Suppl. Decl. at 3.). Plaintiff had no right, entitlement, or protected liberty interest in being sent to Community Corrections from the Denver Jail. Accordingly, Plaintiff has not shown that was deprived of a liberty without due process during the short time period between when he started trying to correct the lie he had originally told and the removal of the Detainer (the ICE Detainer was lodged on August 3, 2005 and withdrawn on April 24, 2006).

II. Equal Protection
If the Court liberally interprets Plaintiffs due process claim as an equal protection claim, such a claim would still fail. "The equal protection clause provides that `[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws.'" Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 659 (10th Cir.2006) (quoting U.S. Const. amend. XIV, § 1). "Equal protection `is essentially a direction that all persons similarly situated should be treated alike.'" Id. (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).
In this case, the Plaintiff fails to make to make an adequate showing that similarly situated persons to himself were treated differently. Instead, the Plaintiff only offers the cursory conclusions that he was illegally detained because of "discrimination on the basis of ethnicity Fourteenth Amendment," and that "[he was] being *1232 held on a immigration detainer for the last nine months as an alien of Greece. Due to racial profiling and [his] Greek Heritage." (Compl. at 3, 7.) The court has accepted as an unrefuted fact that Defendant Wheeler learned of Plaintiffs foreign birth directly from the Plaintiff's specific statement that he was born in Greece. After checking for a valid alien visa or other immigration documents, the Plaintiff, like other foreign nationals without paperwork, was considered presumptively subject for removal proceedings and a detainer was filed. (Suppl. Decl. at ¶ 7-8). Defendant Wheeler, in his Supplemental Declaration, declares:
At all times relevant to my contact with and investigation of Mr. Nasious, I complied in good faith with all DHS and ICE policies and procedures as well as clearly established law. At no time did I ever intentionally violate Mr. Nasious's constitutional rights. (Suppl. Decl. at ¶ 19-20).
There is nothing in the record that shows that he was treated differently from a similarly situated person. Therefore, Plaintiff has not shown that there is any disputed issue as to any material fact necessary to resolve this equal protection claim, and Defendant Wheeler is entitled to judgment as a matter of law.

III. Intentional Infliction of Emotional Distress
Lastly, the Plaintiff claims that Defendant Wheeler's lodgment of the Detainer was outrageous conduct sufficient to support a claim for intentional infliction of emotional distress. (Compl. at 5-6.). In Colorado, "[t]he elements of outrageous conduct are: (1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." Archer v. Farmer Bros. Co., 70 P.3d 495, 499 (Colo.App.2002). The first element, extreme and outrageous conduct, is satisfied if the conduct goes "beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." Rugg v. McCarty, 173 Colo. 170, 476 P.2d 753, 756 (1970) (citing RESTATEMENT (SECOND) OF TORTS § 46 (1965).) The court views the totality of the circumstances in determining whether the conduct at issue is extreme and outrageous. Kirk v. Smith, 674 F.Supp. 803, 811 (D.Colo.1987); Spulak v. K Mart Corp., 664 F.Supp. 1395, 1397 (D.Colo.1985). "The question of whether certain conduct is sufficiently outrageous is ordinarily a question for the jury." Meiter v. Cavanaugh, 40 Colo.App. 454, 580 P.2d 399, 401 (1978). "But it is for the court to determine, in the first instance, whether reasonable men could differ on the outrageous issue." Blackwell v. Del Bosco, 35 Colo.App. 399, 536 P.2d 838 (1975), aff'd, 191 Colo. 344, 558 P.2d 563 (1976).
Here, the record does not support a finding that the Defendant Wheeler's conduct was outrageous. This Court finds that no reasonable man could make a finding of outrageous conduct based on the undisputed facts regarding the actions of Defendant Wheeler. Based on the record, and accepting Plaintiff's allegations as true, there are no facts alleged which show that Defendant Wheeler's conduct was extreme and outrageous conduct, or that he acted recklessly with the intent of causing Plaintiff severe emotional distress. The undisputed facts show Defendant simply followed standard procedures after the Plaintiff lied to him about Plaintiff's nationality. With nothing more than Plaintiff's conclusory allegations that Defendant Wheeler's intended to inflict emotional distress, reasonable people would not disagree that Defendant Wheeler's conduct was neither atrocious nor intolerable.
*1233 Therefore, this Court recommends that Defendant Wheeler be entitled to judgment as a matter of law on any claim of intentional infliction of emotional distress.
WHEREFORE, for the foregoing reasons, the court respectfully
RECOMMENDS that "Defendant Wheeler's "Motion to Dismiss or, in the Alternative, for Summary Judgment" (Doc. No. 78) be GRANTED.

ADVISEMENT TO THE PARTIES
Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); In re Griego, 64 F.3d 580, 583 (10th Cir.1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. See Vega v. Suthers, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); One Parcel of Real Property, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review); International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc., 52 F.3d 901, 904 (10th Cir.1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); Ayala v. United States, 980 F.2d 1342, 1352 (10th Cir.1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). But see, Morales-Fernandez v. INS, 418 F.3d 1116, 1122 (10th Cir.2005) (firm waiver rule does not apply when the interests of justice require review).
Dated this 27th day of January, 2009.
NOTES
[1] Although Plaintiff's filing is entitled "Plaintiff's Answer To Magistrate Judge Recommendation," it is, in substance, an objection to the Magistrate Judge's recommendation pursuant to Fed.R.Civ.P. 72(b)(2).
[2] See 28 U.S.C. § 636(b)(1); United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir.1996) (court's de novo review is limited to "any portion of the magistrate judge's disposition to which specific written objection has been made....").
[3] Although Plaintiff refers to the "Due Process Clause of the Eighth Amendment," Plaintiff's Answer To Magistrate Judge Recommendation (Doc. No. 85) at 5, the Due Process Clause is contained within the Fourteenth Amendment to the U.S. Constitution. See U.S.C.A. Const. amend. XIV, § 1.
[4] "3rd Amended Prisoner Complaint" (Doc. No. 49) (Complaint) ¶ 7. Plaintiff apparently was a prisoner in the Arapahoe County Detention Facility for a short time during the period at issue.
[5] Id. at ¶ 8.
[6] 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
[7] Plaintiff's Answer To Magistrate Judge Recommendation (Doc. No. 85) at 8.
[8] Libertarian Party v. Herrera, 506 F.3d 1303, 1308 (10th Cir.2007) (Internal quotation and citation omitted).
[9] Id. at 1308-09 (internal quotation and citation omitted).
[10] Murray v. City of Tahlequah, 312 F.3d 1196, 1199 n. 3 (10th Cir.2002).
[11] Recommendation (Doc. No. 84) at 10 n. 3.
[12] Plaintiff's Answer To Magistrate Judge Recommendation (Doc. No. 85) at 6.
[13] Motion Ex. A1 at ¶¶ 11-14.
[14] See DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalfthrough incarceration, institutionalization, or other similar restraint of personal libertywhich is the "deprivation of liberty" triggering the protections of the Due Process Clause[.]");
[15] Complaint ¶ 8.
[16] See Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). The Magistrate Judge reasonably interpreted Plaintiff's allegations as contending that the ICE detainer had prevented him from posting a bond to allow him to go to Community Corrections after his sentencing. See Recommendation (Doc. No. 84) at 3.
[17] See Plaintiff's Answer To Magistrate Judge Recommendation (Doc. No. 85) at 2.
[18] See U.S. v. Salerno, 481 U.S. 739, 754-55, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); Faheem-El v. Klincar, 841 F.2d 712, 719 (7th Cir.1988).
[1] Plaintiff was also briefly held at the Arapahoe County Detention Facility. (Compl. at 4.)
[2] Black's Law Dictionary 868 (8th ed.2004).
[3] The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Determining whether a defendant is entitled to qualified immunity involves answering two questions: (1) whether a plaintiff has asserted that the defendant violated a constitutional or statutory right, and if he has, (2) "whether the right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right." Keylon v. City of Albuquerque, 535 F.3d 1210, 1218 (10th Cir.2008) (internal citations and quotations omitted). As discussed herein, the facts in this case do not establish a constitutional violation, and therefore, the court will not address the application of the doctrine of qualified immunity to Defendant Wheeler.
[4] The fact that the Plaintiff, by his own statements, caused Defendant Wheeler to enter incorrect information on the detainer form, is neither a lie nor an intentionally false statement by Defendant Wheeler.
[5] Mun. Court v. Lydon, 466 U.S. 294, 300-01, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) (release on recognizance while awaiting trial satisfies custody requirement); Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (release on parole satisfies custody requirement); see, e.g., Gonzalez v. Justices of Mun. Court, 382 F.3d 1, 5 (1st Cir.2004) (custody requirement satisfied by release on recognizance which restrained petitioner's liberty), vacated on other grounds by Gonzalez v. Mun. Court, 544 U.S. 918, 125 S.Ct. 1640, 161 L.Ed.2d 474 (2005); Simmons v. INS, 326 F.3d 351, 356 (2d Cir.2003) (custody requirement satisfied by INS final order against alien currently serving sentence); Barry v. Bergen County Prob. Dep't, 128 F.3d 152, 160 (3d Cir.1997) (custody requirement satisfied by community service obligation); Wottlin v. Fleming, 136 F.3d 1032, 1034 n. 1 (5th Cir.1998) (per curiam) (custody requirement satisfied by release to halfway house); Miskel v. Karnes, 397 F.3d 446, 450 (6th Cir.2005) (custody requirement satisfied by stayed sentence with no time served); Aguilera v. Kirkpatrick, 241 F.3d 1286, 1291 (10th Cir.2001) (custody requirement satisfied by final deportation order).
[6] Vargas involved an excludable alien rather than a deportable alien, who brought a writ of habeas corpus seeking an expedited determination from INS as to whether he would be excluded from the U.S. upon his release from state prison. The Seventh Circuit stated that if a detainer essentially instructs prison officials to hold a prisoner for deportation proceedings, at the end of his or her current confinement, the detainer can establish custody for habeas purposes. The Vargas court remanded the case for a determination of the detainer's effect. Vargas, 854 F.2d at 1032.
[7] The April 24, 2006 detainer cancellation form that ICE Agent Ronald Strong faxed to the Denver County Jail and the ICE Denver Office is attached as an exhibit in both Plaintiff's Complaint and Defendant Wheeler's motion. (Compl. at 15; Def's Mot., Ex. 2).
[8] The Complaint does not specifically state when any of Plaintiff's efforts to recant his original lie began.